679 P.2d 665

**STATE of Idaho, Plaintiff-Respondent,**

v.

**William Clifford MENDENHALL, Defendant-Appellant.**

**No. 14036, 14037.**

Court of Appeals of Idaho.

March 15, 1984.

Petition for Review Denied May 3, 1984.

Robert E. Kinney, Orofino, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

In these consolidated cases, we are asked to decide whether concurrent sentences for grand larceny and escape can be converted into consecutive sentences after the defendant has violated probation. For reasons explained below, we hold that they cannot. The sentences are vacated, and each case is remanded for resentencing.

William C. Mendenhall was convicted by a jury of grand larceny. While confined in the Clearwater County jail to await sentencing, he escaped. Several years later, he was arrested. He pled guilty to escape under I.C. § 18–2505. A presentence investigation disclosed no other criminal conduct while Mendenhall had been a fugitive. The presentence report portrayed Mendenhall as a family man with regular employment. Former employers and neighbors wrote letters to the court urging leniency. Neither the grand larceny nor the escape had involved violence.

Mendenhall was first sentenced for the escape. The court pronounced an indeterminate sentence of five years in custody of the Board of Correction, retaining jurisdiction for 120 days as authorized by I.C. § 19–2601(4). Several days later, another judge of the same district court pronounced an identical, concurrent sentence for the grand larceny. Following evaluation under the 120-day program, both judges suspended execution of the remaining sentences and placed Mendenhall on probation.

Mendenhall later was found in possession of stolen firearms. He was convicted of a federal offense and was sentenced to confinement at a federal correction facility. While serving the federal sentence, Mendenhall was returned temporarily to Idaho where he faced a charge that he had violated his probation. He admitted the violation. The court, acting through a judge different from those who had imposed the original concurrent sentences, revoked Mendenhall's probation. The judge entered new five-year indeterminate sen-

tences, allowing credit for time previously served in state custody and providing that each sentence run concurrently with the federal sentence. However, the judge refused to allow the new sentences to be served concurrently with each other. Rather, he ordered that the escape sentence be consecutive to the grand larceny sentence. These appeals followed.[1]

■■■ Mendenhall argues that the district court exceeded its authority when it increased his punishment by making the previously concurrent sentences consecutive. This contention requires us to examine the relationship between two competing statutory principles. The first principle, embodied in I.C. § 18–2505, is that if a person escapes from custody while charged with or convicted of a felony, any sentence of confinement for the escape must be consecutive to the confinement imposed for the underlying felony.[2] *See, e.g., State v. Thomas,* 98 Idaho 623, 570 P.2d 860 (1977). The second principle, derived from I.C. § 19–2603, is that if a person is initially sentenced to a term of confinement, but the sentence is suspended and probation is granted, the court may not later increase the term of confinement when probation is revoked.[3] *See State v. Pedraza,* 101 Idaho 440, 614 P.2d 980 (1980).

Each party on appeal urges us to apply one of these statutory principles to the exclusion of the other. Mendenhall relies upon I.C. § 19–2603 and *Pedraza,* which

prohibit increasing the original sentence when probation is revoked. The state responds that the consecutive sentences were not only proper but necessary under the escape statute, I.C. § 18–2505. These competing principles must be examined closely to determine whether they truly are mutually exclusive. We turn first to the principle of consecutive sentencing for escape.

## I

Idaho Code § 18–2505, set forth fully at note 2 *supra,* provides that if a person is convicted of escape while charged with or convicted of a felony, "any such second term of imprisonment shall commence at the time he would otherwise have been discharged." Our threshold inquiry is whether the statute is applicable in this case. Here, the escape sentence was the first one imposed. It has been suggested that the escape sentence did not contain a "second term of imprisonment," and therefore was not governed by § 18–2505. We believe this suggestion is premised upon an unduly narrow reading of the phrase, "any such second term of imprisonment." This phrase is ambiguous on its face, but its meaning can be ascertained by identifying the legislative intent. Indicia of legislative intent may be "collected from the context [of a statute], from the occasion and necessity of the law, from the mischief felt, and the remedy in view." *Knudson v. Boundary County School District No. 101,* 104

---

1. After the notices of appeal were filed, the district court—apparently acting *sua sponte* —entered orders "staying" execution of the sentences. Because no issue is raised on appeal concerning the effect of these orders, we do not review them here.

2. Idaho Code § 18–2505 provides as follows: *Every prisoner charged with or convicted of a felony who is confined in any jail or prison including the state penitentiary, or who while outside the walls of such jail or prison in the proper custody of any officer or person, or while at work in any factory, farm or other place without the walls of such jail or prison, who escapes or attempts to escape from such officer or person, or from such jail or prison, or from such factory, farm or other place without the walls of such jail or prison, shall be guilty of a felony, and upon conviction*

*thereof, any such second term of imprisonment shall commence at the time he would otherwise have been discharged.* [Emphasis added.]

3. Idaho Code § 19–2603 provides as follows: *When the defendant is brought before the court ... it may, if judgment has been withheld, pronounce any judgment which it could originally have pronounced, or, if judgment was originally pronounced but suspended, the original judgment shall be in full force and effect and may be executed according to law,* and the time such person shall have been at large under such suspended sentence shall not be counted as a part of the term of his sentence, but the time of the defendant's sentence shall count from the date of service of such bench warrant. [Emphasis added.]

Idaho 93, 97, 656 P.2d 753, 757 (Ct.App. 1982), *quoting from Noble v. Glenns Ferry Bank, Ltd.*, 91 Idaho 364, 367, 421 P.2d 444, 447 (1966) *and Offield v. Davis*, 100 Va. 250, 40 S.E. 910, 912 (1902).

The occasion to prescribe penalties for escape initially arose during Idaho's territorial era. Section 6452 of the Revised Statutes of Idaho Territory then provided as follows:

> Every territorial prisoner confined in the territorial prison for a term less than for life, who escapes therefrom, is punishable by imprisonment in the territorial prison for a term equal in length to the term he was serving at the time of such escape; *said second term of imprisonment* to commence from the time he would otherwise have been discharged from said prison. [Emphasis added.]

*See Hays v. Stewart*, 7 Idaho 193, 61 P. 591 (1900). Thus, in its original form, the statute was enacted solely to punish escapes from the territorial prison. Confinement at the prison necessarily would have been preceded by a conviction and sentence for another felony. Consequently, any additional term of imprisonment for escape would have occurred "second" in time. The territorial legislature plainly was referring to the escape sentence when it required "said second term of imprisonment" to be consecutive.

In 1911, after two decades of statehood, the legislature made technical changes in the statute by substituting the state penitentiary for the territorial prison and by providing that the minimum penalty for escape would be imprisonment for one year. 1911 Idaho Sess.Laws ch. 21, pp. 46–47. In 1931, the legislature made important, substantive changes to the statute's subject matter coverage. The statute was broadened to govern not only escapes by prisoners from the state penitentiary but also escapes from county jails or from other custodial situations. The statute also was extended to cover persons charged with felonies as well as those convicted. The legislature deleted reference to a minimum term of confinement for escape, but retained the requirement that any sentence of imprisonment be for a consecutive term:

> Every prisoner charged with or convicted of a felony who is confined in any jail or prison including the state penitentiary for a term less than life, or who while outside the walls of such jail or prison in the proper custody of any officer or person, or while at work in any factory, farm or other place without the walls of such jail or prison, who escapes or attempts to escape from such officer or person, or from such jail or prison, or from such factory, farm or other place without the walls of such jail or prison, shall be guilty of a felony, and upon conviction thereof, *any such second term of imprisonment* shall commence at the time he would otherwise have been discharged. [1931 Idaho Sess.Laws ch. 127, p. 223. Emphasis added.]

Because the subject matter coverage of the statute had been expanded to include escapes from places other than the state penitentiary and escapes by persons other than those already convicted and sentenced for other felonies, the legislature in 1931 no longer could refer to an escape sentence merely as "said second term of imprisonment." A person charged with a felony when he escaped from custody might not ultimately be convicted of that felony—or, even if convicted, he might not be imprisoned for the felony. In such circumstances a court might deem it inappropriate to imprison the defendant for escape. Accordingly, the legislature employed the phrase "any such second term of imprisonment," recognizing that an escape sentence might not impose a second term of imprisonment in all cases.

The legislature's choice of syntax was not ideal; but in our view, it did not evince an intent to abolish the requirement of a consecutive penalty for escape where imprisonment was imposed. Rather, the legislature was searching for language to accommodate the variety of fact patterns covered by the broadened scope of the statute. Consequently, although the statute as amended in 1931 no longer specified con-

finement for escape as the "second" term of imprisonment, it continued to provide that any such confinement would be consecutive wherever there was in fact a term of imprisonment imposed for the other felony. The policy of consecutive imprisonment was preserved.

The statute today remains substantially in the form cast by the 1931 amendment. In 1969, the statute was altered merely by deleting the phrase, "for a term less than life," thus extending the statute to cover escapes by persons serving life terms in custody. 1969 Idaho Sess.Laws ch. 205, pp. 600–01. In 1972, it was reenacted without change after repeal of the short-lived Model Penal Code. 1972 Idaho Sess.Laws ch. 381, p. 1102. In contrast, when reenacting the rest of the prior criminal code, the legislature modified I.C. § 18–308, which had made successive terms of imprisonment for felonies other than escape mandatory in some circumstances. The legislature explicitly made consecutive sentences, in cases governed by § 18–308, discretionary with the court.[4] The contrast between the legislature's reference to discretionary consecutive sentencing for other felonies, and its retention of mandatory consecutive sentencing for escapes, could not have been more plain.

■ In view of this legislative history, we deem the statutory principle governing escapes to be clear. It requires any confinement under an escape sentence, and any confinement upon the felony for which the defendant was in custody when he escaped, to be consecutive. It does not matter, in light of this overriding principle, which of the two sentences is pronounced first. To rule otherwise would suggest that nearly a century of legislative commitment to consecutive imprisonment might be undone by the simple expedient of sentencing an escape before sentencing the other felony.

■ It is implicit in our interpretation of § 18–2505 that an escape sentence may, if it specifically so provides, commence when the defendant otherwise would be discharged on the other felony, even if a sentence for that felony has not yet been pronounced. So long as the other felony is adequately identified, custodial authorities can ascertain when the defendant would be entitled to discharge from custody on that felony. The escape sentence can be administered accordingly. If the escape sentence does not contain such a provision, the same result still might be obtained indirectly by making the sentence for the other felony consecutive to the escape sentence. In that event the two sentences, taken together, would satisfy the mandate of § 18–2505. *Cf. State v. Teal,* 105 Idaho 501, 670 P.2d 908 (Ct.App.1983) (holding, in a nonescape case, that where two sentences erroneously were both made consecutive to each other, the first sentence pronounced would be the first served and only the second sentence would be deemed consecutive).

■ Accordingly, we hold that any terms of imprisonment for grand larceny and escape in this case were required by § 18–2505 to be consecutive. The original escape sentence was defective for failure to so provide; and its defect was not remedied indirectly by any consecutive confinement provision in the grand larceny sentence. Therefore, it was appropriate for the district judge, upon revoking Mendenhall's probation, to consider modifying the sentences to bring them into conformity with the mandate of § 18–2505. *See* I.C.R. 35

---

4. Upon reenactment in 1972, I.C. § 18–308 was modified as follows:

When any person is convicted of two or more crimes before sentence has been pronounced upon him for either, the imprisonment to which he is sentenced upon the second or other subsequent conviction, in the discretion of the court, may ~~must~~ commence at the termination of the first term of imprisonment to which he shall be adjudged, or at the termination of the second or other subsequent term of imprisonment, as the case may be. [1972 Idaho Sess.Laws ch. 381, pp. 1102, 1105–06.] Following reenactment of this statute as modified, our Supreme Court held that the courts also possess an inherent discretionary power—derived from common law—to impose consecutive sentences in procedural circumstances other than those specified in § 18–308. *State v. Lawrence,* 98 Idaho 399, 565 P.2d 989 (1977).

(providing that illegal sentences may be corrected at any time).

## II

■ However, it does not necessarily follow that the judge acted properly by converting the original, concurrent five-year sentences into consecutive terms of equal duration—effectively doubling Mendenhall's punishment. Nothing in § 18–2505 was offended by the total length of punishment originally imposed for the grand larceny and escape. The conflict with § 18–2505 lay in the concurrent form of the sentences. The judge was not compelled to increase the punishment in order to correct this illegality.

■ The judge had both cases before him when he revoked Mendenhall's probation. Under I.C. § 19–2603, set forth fully at note 3 *supra*, when probation was revoked the concurrent sentences were "in full force and effect" and they "may [have been] executed, according to law." Had they been so executed, without modification, they would have imposed an aggregate, indeterminate five-year term of imprisonment. Consistent with this level of punishment, the judge could have brought the sentences into compliance with the mandate of § 18–2505 by adjusting the term of each individual sentence so that, when served consecutively, the two sentences together would not exceed five years. Rule 35, mentioned above, not only authorizes correction of an illegal sentence at any time but also authorizes reduction of a sentence upon revocation of probation. By making the sentences consecutive without adjusting their terms, the judge went beyond mere correction of the sentences. He imposed a harsher penalty. That decision implicates the principle found in *State v. Pedraza, supra.*

In *Pedraza,* our Supreme Court confronted the question "whether a trial court may increase a previously imposed but suspended sentence upon a finding that the defendant violated the conditions of his probation." 101 Idaho at 441, 614 P.2d at 981. As noted earlier, the Supreme Court an-

swered this question in the negative, based upon its reading of I.C. § 19–2603. The Supreme Court compared § 19–2603 with another statute, I.C. § 20–222, which provides that upon revocation of probation the sentencing court may "cause the sentence imposed to be executed ... or may impose any sentence which originally might have been imposed at the time of conviction." The Supreme Court resolved an apparent conflict between these statutes by holding that § 20–222, insofar as it authorizes imposition of any sentence that might have been imposed at the time of conviction, applies only to cases where judgment has been withheld. It does not apply to cases where sentences have been imposed but later suspended. *Id.* at 442, 614 P.2d at 982.

Shortly after *Pedraza* was decided, the Supreme Court again emphasized this distinction in *State v. Johnson,* 101 Idaho 581, 618 P.2d 759 (1980). There it upheld imposition of an increased sentence upon a defendant who had fled the jurisdiction after sentence had been pronounced but before any portion of it had been put into execution. The court analogized the situation to a withheld judgment rather than to a sentence imposed but suspended. Recently, we noted that "there may be an inconsistency between *Johnson* and *Pedraza,*" but we deemed ourselves constrained to treat both decisions as authoritative, accepting the distinction between sentences not put into execution and sentences imposed but later suspended. *State v. West,* 105 Idaho 505, 507, 670 P.2d 912, 914 (Ct.App.1983).

Here, the concurrent five-year sentences for grand larceny and escape were imposed and Mendenhall commenced serving them by participating in the 120-day evaluation period. Following that evaluation, he was placed on probation which subsequently was revoked. These facts bring the instant case within the ambit of *Pedraza.*

■ The state argues that restrictions against increased penalties should not apply where one of the original sentences is illegal. The state's argument appears to

be directed primarily against an assertion by Mendenhall that the consecutive sentences in this case were unconstitutional— an assertion which we do not accept. Indeed, we recently held that when an illegal sentence is corrected, the new sentence does not violate due process simply because it carries a penalty arguably greater than the original sentence, unless vindictiveness is shown. *State v. Hoisington*, 105 Idaho 660, 671 P.2d 1362 (Ct.App.1983). It is also well established that a defendant's constitutional protection against double jeopardy is not infringed by a corrected sentence which carries a heavier penalty than a previously imposed, illegal sentence. *E.g., Bozza v. United States*, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947).

■■■ However, the *Pedraza* principle is grounded in statutory construction, not in constitutional doctrine. Although the illegality of an original sentence narrows the constitutional scrutiny applied to a subsequent, corrected sentence, we are not persuaded that it entirely insulates the corrected sentence from application of *Pedraza.* Idaho Code § 19-2603, as interpreted by *Pedraza,* provides that if a defendant violates his probation, he may be ordered to serve the full balance of the sentence previously imposed but suspended. Of course, as in this case, the defendant also may be prosecuted, convicted and sentenced for any other crime committed while violating the probation. But § 19-2603 and *Pedraza* embody the principle that a judge, upon revoking probation, must refrain from increasing the original sentence upon a hindsight view of the appropriate measure of punishment. The thrust of this principle is not blunted by a legal defect in the original sentence where the defect lies in the form of the sentence, not in the length of the punishment imposed.

■■■ Thus, the *Pedraza* principle limits but does not displace—and is not displaced by—the principle of consecutive imprisonment for escape. The principles are not mutually exclusive. *Pedraza* does not interfere with a court's authority to impose consecutive terms in cases outside the scope of § 19-2603. Neither does it wholly emasculate the court's authority to correct an illegal, concurrent sentence by making it consecutive, in a § 19-2603 case. Rather, it narrows the range of corrective sentences to those which will not increase the aggregate penalty imposed.

■■■ In this case we conclude that the district court exceeded its authority by imposing an aggregate penalty beyond that provided in the original sentences. Accordingly, the sentences imposed upon revocation of probation are vacated. The cases are remanded for resentencing consistent with this opinion.

WALTERS, C.J., concurs.

SWANSTROM, J., specially concurring.

I concur in the result of vacating the "new" sentences imposed by Judge Schwam when Mendenhall's probation was revoked. However, under the unique facts of this case, I am not persuaded that the original escape sentence was an "illegal sentence" or was "imposed in an illegal manner." I.C.R. 35. It should not have been "corrected." On remand I would merely direct that both original sentences for escape and grand larceny be reinstated, to run concurrently.